1   Rosemary M. Rivas (State Bar No. 209147)
    rrivas@finkelsteinthompson.com
2   Mark Punzalan (State Bar No. 247599)
    mpunzalan@finkelsteinthompson.com
3   **FINKELSTEIN THOMPSON LLP**
    100 Bush Street, Suite 1450
4   San Francisco, CA 94104
    Telephone: (415) 398-8700
5   Facsimile: (415) 398-8704
6
7   Counsel for Plaintiff Henry Zwang

8                    **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

11   HENRY ZWANG,                          Case No. CV-10-1994-LB

12                     Plaintiff,          **PLAINTIFF'S NOTICE OF MOTION
                  v.                        AND MOTION FOR PRELIMINARY
13                                          INJUNCTION AND EXPEDITED
     W. DONALD BELL; GORDON A.              DISCOVERY; MEMORANDUM OF
14   CAMPBELL; EUGENE B. CHAIKEN;           POINTS AND AUTHORITIES IN
     DAVID M. ERNSBERGER; EDWARD L.         SUPPORT THEREOF**
15   GELBACH; PETER G. HANELT; JAMES E.
     OUSLEY; MARK L. SANDERS; BELL          Date:   July 1, 2010
16   MICROPRODUCTS INC.; AVNET, INC.; and   Time:   11:00 a.m.
     AVT ACQUISITION CORP.                  Judge:  The Honorable Laurel Beeler
17
18                     Defendants.
19

20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................2

LEGAL ARGUMENT ................................................................................................................5

I.     The Court Should Grant Plaintiff's Motion for a Preliminary Injunction ........................5

        A.     Plaintiff Has a Strong Likelihood of Success on the Merits of His Case .............6

               1.     Plaintiff Has a Strong Likelihood of Success on Claims Under Section 14(a) and for Breach of Fiduciary Duty of Candor Because Defendants Have Failed to Disclose Material Facts Regarding the Proposed Transaction ..........................................................................................................6

                        a.     Defendants Fail to Disclose Material Information Regarding the Sales Process ........................................................................................8

                        b.     Defendants Fail to Disclose Material Information Supporting the Board's Reasons for the Merger ....................................................9

                        c.     Raymond James's Valuation Analyses in Support of its Fairness Opinion Must Be Disclosed ........................................................10

               2.     Plaintiff Has a Strong Likelihood of Success on Claims For Breach of Fiduciary Duty to Maximize Shareholder Value .....................................12

        B.     Plaintiff Faces Immediate Irreparable Injury Due to Defendants' Attempt to Force a Stockholder Vote Without Disclosing All Material Information Concerning the Proposed Transaction .................................................................18

        C.     The Balance of Equities Weighs Heavily in Favor of Plaintiff as Plaintiff Raises Serious Questions and Is Likely to Suffer Greater Injury from a Denial of the Preliminary Injunction than Defendants Will Suffer from a Short Delay in The Closing of the Proposed Transaction ....................................................................20

II.     The Court Should Grant Plaintiff's Motion to Expedite Discovery ...............................21

i

A.    Plaintiff Can Show Good Cause for Expedited Discovery ..................................22

B.    Defendants Will Face No Prejudice from Expedited Discovery Because Plaintiff's Requests Are Limited and Narrowly Focused ...................................22

CONCLUSION .............................................................................................................................24

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ...........................................................................16

*Bader v. Anderson*,
  179 Cal.App.4th 775 (2009) ...............................................................7, 12

*Barkan v. Amsted Indus. Inc.*,
  567 A.2d 1279 (Del. 1989) .........................................................................15

*Brown v. Brewer*,
  No. CV 06-3731-GHK (JTLx), 2008 WL 6170885 (C.D. Cal. Jul. 14, 2008) ...................10

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) ...............................................................6, 8, 9

*Eisenberg v. Chicago Milwaukee Corp.*,
  537 A.2d 1051 (Del. Ch. 1987) ...................................................................19

*Freedman v. Restaurant Assocs. Indus., Inc.*,
  No. 9212, 1990 Del. Ch. LEXIS 142 (Del. Ch. Sept. 21, 1990).............................7

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) ...........................................................................16

*Gilmartin v. Adobe Res. Corp.*,
  C.A. No. 12467, 1992 Del. Ch. LEXIS 80 (Del. Ch. Apr. 6, 1992) .......................19

*Gimbel v. Signal Cos.*,
  316 A.2d 599(Del. Ch. 1974),...................................................................14

*In re Gen. Motors (Hughes) S'holder Litig.*,
  No. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005) ...................................14

*In re Holly Farms Corp. S'holders Litig.*,
  C.A. No. 10350, 1988 Del. Ch. LEXIS 164 (Del. Ch. Dec. 30, 1988).....................19

*In re Netsmart Techs., Inc. Shareholder Litig.*,
  924 A.2d 171 (Del. Ch. 2007)................................................11, 12, 19, 20

*Jones v. H.F. Ahmanson & Co.*,
  1 Cal.3d 93 (1969) .....................................................................................12

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

*Joseph v. Shell Oil Co.*,
   482 A.2d 335 (Del. Ch. 1984).................................................................19

*Kumar v. Racing Corp. of Am., Inc.*,
   No. 12,039, 1991 Del. Ch. LEXIS 75 (Del. Ch. Apr. 26, 1991)..........................18

*L.P. v. Marshall*,
   832 A.2d 1254 (Del. Ch. 2003).............................................................19

*Lee v. Interinsurance Exchange*,
   50 Cal.App.4th 694 (1996) .............................................................13, 16

*Los Angeles Memorial Coliseum Comm'n v. Nat. Football*,
   634 F.2d 1197 (9th Cir. 1980) .............................................................5

*Matson v. Isom Tech. Consulting v. Dell Inc.*,
   No. CIV S-08-0683, 2008 WL 3863447 (E.D. Cal. Aug. 18, 2008) ......................22

*Mills Acquisition Co. v. MacMillan, Inc.*,
   559 A.2d 1261 (Del. 1989)...........................................................13, 15, 19

*Nagy v. Bistricer*,
   770 A.2d 43 (Del. Ch. 2000)................................................................7

*Neubauer v. Goldfarb*,
   108 Cal. App. 4th 47 (2003) ...............................................................6

*Oakland Raiders v. National Football League*,
   93 Cal. App. 4th 572 (2001) ............................................................7, 12

*Paramount Commc'n, Inc. v. QVC Network, Inc.*,
   637 A.2d 34 (Del. 1994) ..............................................................passim

*Phillips v. Insituform of N. Am., Inc.*,
   C.A. No. 9173, 1987 Del. Ch. LEXIS 474 (Aug. 27, 1987)..............................18

*QVC Network Inc. v. Paramount Commc'ns, Inc*,
   635 A.2d 1245 n.50 (Del. Ch. 1993)......................................................20

*Renaud v. Gillick*,
   No. C06-1304RSL, 2007 WL 98465 (W.D. Wash. Jan. 8, 2007) ........................23

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
   506 A.2d 173 (Del. 1986) .............................................................passim

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

*Rosenblatt v. Getty Oil Co.*,
  493 A.2d 929 (Del. 1985) ................................................................................7

*Schoon v. Smith*,
  953 A.2d 196 (Del. 2008) ..............................................................................16

*Sealy Mattress Co. of N.J. v. Sealy, Inc.*,
  532 A.2d 1324 (Del. Ch. 1987) .....................................................................18

*Semitool, Inc. v. Tokyo Electron Am.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ..................................................................22

*Sierra Club v. Hathaway*,
  579 F.2d 1162 (9th Cir. 1978) .........................................................................5

*Simonetti Rollover IRA v. Margolis*,
  2008 WL 5048692  (Del. Ch. June 27, 2008) ...............................................11

*Simonetti Rollover IRA v. Margolis*,
  C.A. No. 3694-VCN, 2008 WL 2588577 (Del Ch. June 27, 2008) ...............10

*Skeen v. Jo-Ann Stores, Inc.*,
  750 A.2d 1170 (Del. Ch. 2000) .......................................................................7

*Small v. Fritz Companies, Inc.*,
  30 Cal.4th 167 (2003) ...................................................................................12

*TSC Industries, Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) .........................................................................................6

*United States v. Smith*,
  155 F.3d 1051 n. 20 (9th Cir.1998) ...............................................................10

*Unocal Corp. v. Mesa Petroleum Co.*,
  493 A.2d 946 (Del. 1985) ..............................................................................13

*Wachovia Securities, LLC v. Stanton*,
  571 F. Supp. 2d 1014 (N.D. Iowa 2008) ........................................................24

*Weinberger v. Rio Grande Indus., Inc.*,
  519 A.2d 116 (Del. Ch. 1986) .....................................................................7, 8

*Wilmington Trust Co. v. Coulter*,
  Del.Supr., 200 A.2d 441 (1964) .....................................................................15

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

*Zen Invs., LLC v. Unbreakable Lock Co.*,
   No. 06-112, 2006 U.S. Dist. LEXIS 37171 (E.D. Pa. June 2, 2006)....................................12

**<u>Statutes</u>**

15 U.S.C. § 78n(a) .................................................................................................................6

15 U.S.C. § 78u-4(b)(1) ........................................................................................................6

**<u>Rules</u>**

Fed. R. Civ. P. 26(d) ...........................................................................................................21

Fed. R. Civ. P. 26(f)..........................................................................................1, 2, 21, 22, 24

Fed. R. Civ. P. 65(a) .......................................................................................................1, 5

**<u>Regulations</u>**

17 C.F.R. § 240.14a-9(a) ......................................................................................................6

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on July 1, 2010, at 11:00 a.m., or as soon as counsel may be heard, the undersigned will move this Court before the Honorable Laurel Beeler, at the United States District Court for the Northern District of California, 1301 Clay Street, Suite 400 S, Oakland, California 94612-5212, pursuant to Rules 26 and 65 of the Federal Rules of Civil Procedures, for an Order enjoining the Proposed Transaction (as defined below) and granting expedited discovery proceedings.  Plaintiff respectfully submits the following memorandum of points and authorities in support thereof.

## MEMORANDUM OF POINTS AND AUTHORITIES
## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law in support of his: (a) motion for preliminary injunction enjoining the shareholder vote on the proposed merger, whereby Avnet, Inc. and its wholly-owned subsidiary AVT Acquisition Corp. (collectively "Avnet") seek to acquire all outstanding shares of Bell Microproducts Inc. ("Bell Micro" or the "Company") in an all cash transaction for an inadequate price of $7.00 per share (the "Proposed Transaction"), and (b) motion to expedite discovery.  Unless the Proposed Transaction is preliminarily enjoined by this Court, Plaintiff will be unable to make an informed decision whether to vote in favor of the Proposed Transaction, and is thus threatened with irreparable harm.

Plaintiff meets his burden for a preliminary injunction since the Proposed Transaction is manifestly unfair to Plaintiff in a manner that cannot be remedied by monetary damages.  Among other things: a) the Proposed Transaction is being consummated pursuant to utterly deficient disclosures and the omission of numerous material facts necessary for Plaintiff to make an informed decision for the upcoming shareholder vote; and b) the process by which the Bell Micro Board agreed to the Proposed Transaction was seriously flawed and failed to take any reasonable steps to ensure the maximization of shareholder value.  As detailed below and as will be further shown after expedited discovery, it appears

that the Bell Micro Board failed to properly exercise its fiduciary duties in connection with the Proposed Transaction.

Plaintiff can show good cause to conduct discovery on an expedited basis since he may be forced to vote on the Proposed Transaction within a matter of weeks. Thus, because the Rule 26(f) conference is not scheduled to take place until August 5, 2010, it may be months before Plaintiff can begin conducting discovery, and the Proposed Transaction may essentially be completed by then. As such, while this motion sets forth Plaintiff's best basis for a preliminary injunction with the facts currently available to him, Plaintiff respectfully requests that the Court allow the limited discovery set forth in Section II.B to take place immediately. Plaintiff requests that the Court defer its ruling on the preliminary injunction until Plaintiff evaluates the evidence obtained through expedited discovery. Plaintiff will then provide further evidence supporting his motion for preliminary injunction in supplemental briefing to this Court.

## STATEMENT OF FACTS

Bell Micro is a distributor and reseller of data storage and server products and solutions, computer component products and peripherals, and software applications that has performed remarkably well throughout the recent economic downturn. As the Company stated in its most recent Form 10K (filed with the SEC on March 26, 2010), although the global recession impacted the Company's sales in 2008 and early 2009, the economic recovery in the second half of 2009 resulted in an increased demand for Bell Micro's products.

This increased demand was reflected in the Company's remarkable financial results for the fourth quarter of 2009. In the Company's March 3, 2010 press release touting these financial results, the Company reported net sales in the fourth fiscal quarter of 2009 of $837.0 million, an increase of 9% compared to both the third quarter of 2009 and the fourth quarter of 2008. Further, the Company's net income for the same quarter was $12.9 million, or $0.40 per diluted share, compared to the prior quarter's income of $1.7 million. *See* accompanying Declaration of Mark Punzalan ("Punzalan Decl."), Exh. A. Analysts also took note as one commentator from Bloomberg's *Businessweek.com* lauded Bell Micro's recent successes and that the Company had

"bounced back" from previous issues that had impacted the Company's financial results.  *See* Punzalan Decl., Exh. B.  Thus, in light of the Company's recent turnaround and future prospects for continued growth, the Individual Defendants have no valid or pressing reason to sell the Company at the low value.

In spite of Bell Micro's recent successes, on March 29, 2010, Defendants announced that they approved an agreement to sell Bell Micro to Avnet, Inc. for approximately $7.00 per share in a deal valued at $594 million.  *See* Punzalan Decl., Ex. C.  The Company announced that the deal could close in as soon as 60 days (from March 29, 2010).  *Id.*  The offer price of $7.00, however, provides inadequate consideration to Plaintiff as a Bell Micro shareholder.  Indeed, a leading analyst report dated April 5, 2010 indicated that the fair value of Bell Micro stock is $7.61.  *See* Punzalan Decl., Ex. D.  Thus, the price offered in the Proposed Transaction not only represents an inadequate premium for Bell Micro shareholders, but actually provides Avnet a discount of 8% to the true value for the Company's stock as determined by a leading independent analyst.  As such, Bell Micro's value as an ongoing business is greater than the consideration to be paid in the Proposed Transaction.  Indeed, the Proposed Transaction is inadequate to Plaintiff as a Bell Micro shareholder and represents a significant discount to the Company's actual value in the marketplace.

Moreover, as part of the merger agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.  For instance, in the Proposed Transaction's Agreement and Plan of Merger, filed with the SEC in the Company's March 29, 2010 Form 8-K ("Merger Agreement"), the Merger Agreement contains a strict "no shop" provision (Section 6.2) prohibiting the members of the Bell Micro Board from taking any affirmative action to comply with their fiduciary duties to maximize shareholder value.  *See* Punzalan Decl., Exh. E, p. 47.  Section 6.2 of the merger agreement also includes a strict "standstill" provision prohibiting Defendants from engaging in discussions or negotiations relating to alternative business combinations.  *Id.*  In addition to the "no shop" and "standstill" provisions, the Section 9.3(b) of the Merger Agreement includes a $10.5 million termination fee – an excessive

amount that appears to represent approximately 19% of the Company's current cash on hand – to be paid by Bell Micro should the Board choose to accept a superior deal.  *See* Punzalan Decl., Exh. E, p. 64.  Unless the Proposed Transaction is enjoined, the termination fee in combination with the preclusive deal protection devices, among other things, will all but ensure no competing offer.

The Individual Defendants also have conflicts of interest putting them at odds with Bell Micro public shareholders.  Pursuant to Section 3.3 of the Merger Agreement, all outstanding stock options, whether or not they have vested or are exercisable, will accelerate and be exercisable upon the consummation of the merger.  *See* Punzalan Decl., Exh. E, p. 17.  As detailed below, the Individual Defendants are holders of thousands of stock options, and the Proposed Transaction will greatly accelerate the Defendants' opportunity to monetize their stake in Bell Micro, creating a conflict that prevents them from adequately representing the public shareholders.  Moreover, Avnet and the surviving corporation will also indemnify the Individual Defendants with respect to all acts or omissions by them in their directorial capacities for acts prior to the effective time of the Proposed Transaction. *See* Punzalan Decl., Exh. E, p. 57.  The indemnification may, for example, serve to insulate Defendants for any potential liability in connection with any of the legal proceedings in which Bell Micro is involved.

Further, to secure shareholder support for the unfair Proposed Transaction, on April 12, 2010, the Individual Defendants filed with the SEC a materially false and misleading Proxy on Form PREM14A ("Proxy").  *See* Punzalan Decl., Exh. F.  The Proxy, which recommends that Bell Micro shareholders vote in favor of the Proposed Merger, omits and/or misrepresents a wealth of material information about the Company's sales process to Avnet, the inadequate consideration offered in the Proposed Merger, and the actual intrinsic value of the Company's assets both as a stand-alone entity and as a merger partner for Avnet. As detailed more specifically below, the Proxy omits and/or misrepresents material information regarding, among other things:

(a)    the strategic alternatives that the Board and Company management considered, particularly what criteria was used to select the entities with whom the Company chose to enter into confidentiality agreements.  *See* Punzalan Decl., Exh. F, p. 20;

(b)      Defendants' reasons for pursuing a business transaction only with Avnet despite having entered confidentiality agreements with 34 other entities in the three years preceding the agreement with Avnet.  *See* Punzalan Decl., Exh. F, p. 20-21;

(c)      Defendants' reasons for signing an exclusivity agreement with Avnet.  *See* Punzalan Decl., Exh. F, p. 22;

(d)      All alternative proposals from Avnet and its reasons for agreeing to a $10.5 termination fee that represents 19% of the Company's cash reserves, *See* Punzalan Decl., Exh. F, p. 23;

(e)      Information regarding the Fairness Opinion, including the specific "financial and operating information" upon which Raymond James relied in its Fairness Opinion.  *See* Punzalan Decl., Exh. F, p. 27-33; and

(f)      The Board's reasons for recommending that shareholders vote in favor of the Proposed Transaction.  *See* Punzalan Decl., Exh. F, p. 24-27.

Thus, Plaintiff hereby seeks to enjoin the Proposed Transaction until Defendants make the proper disclosures necessary for Plaintiff to make an informed decision in voting on the Proposed Transaction.  Moreover, because the Proposed Transaction may be consummated in mere weeks, Plaintiff requests expedited discovery in conjunction with his motion for a preliminary injunction.

## **LEGAL ARGUMENT**

**I.      The Court Should Grant Plaintiff's Motion for a Preliminary Injunction**

Rule 65(a) of the Federal Rules of Civil Procedure provides the Court with the authority to issue a preliminary injunction.  Generally, to obtain injunctive relief, a moving party must show a "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Sierra Club v. Hathaway*, 579 F.2d 1162, 1167 (9th Cir. 1978). The Ninth Circuit states that the moving party shall meet his or her burden by demonstrating either: "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.'" *Los Angeles Memorial Coliseum Comm'n v. Nat. Football,* 634 F.2d 1197, 1201 (9th Cir. 1980) (citation omitted).

A.       **Plaintiff Has a Strong Likelihood of Success on the Merits of His Case**

Plaintiff's Complaint alleges claims for, among others, violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and Securities and Exchange Commission Rule 14a-9 promulgated thereunder ("Section 14(a)") and for breaches of fiduciary duty in connection with the Proposed Transaction.  Here, Plaintiff is entitled to injunctive relief on multiple grounds, any one of which is sufficient for the Court to enjoin the shareholder vote on the Proposed Transaction.

       1.       **Plaintiff Has a Strong Likelihood of Success on Claims Under Section 14(a) and for Breach of Fiduciary Duty of Candor Because Defendants Have Failed to Disclose Material Facts Regarding the Proposed Transaction**

Plaintiff has a strong likelihood of success on his Section 14(a) claim.  Section 14(a) makes it unlawful for any person to solicit, in violation of regulations promulgated by the SEC, "any proxy or consent or authorization in respect of any security ... registered pursuant to section 781." *See* 15 U.S.C. § 78n(a). SEC Rule 14a-9 provides: "No solicitation subject to this regulation shall be made by means of any proxy statement ... containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." *See* 17 C.F.R. § 240.14a-9(a). To plead a violation of 14(a) and Rule 14a-9, Plaintiff must allege that the Proxy "contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). An omitted fact is "material" if there is a "substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976).  Moreover, the movant must specify "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

Similarly, Defendants' failure to provide material disclosures in their Proxy also provides the basis for their breach of their duty of candor to Plaintiff.  *See Neubauer v. Goldfarb*, 108 Cal. App. 4th

47, 62-63 (2003) (nothing that directors of corporations are under a fiduciary duty of candor to disclose fully and fairly all material information within the Board's control to the company's shareholders). Delaware courts, which routinely handle litigation challenging corporate transactions such as the one here,[1] similarly find that when voting on a proposed merger, shareholders are entitled to an accurate description of the process used by directors in deciding to support a merger and the reasons supporting their decision.  *Nagy v. Bistricer*, 770 A.2d 43, 59 (Del. Ch. 2000).  The duty of disclosure "requires that directors disclose fully and fairly all material information within the board's control."  *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. Ch. 2000).  Misstatements and omissions are considered material "if there is a substantial likelihood that a reasonable stockholder would consider [them] important in deciding how to vote."  *Id.*  However, materiality "does not require proof of a substantial likelihood that disclosure of the omitted fact[s] would have caused the reasonable investor to change his vote."  *See, e.g., Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985).

Defendants have also violated their fiduciary duties to disclose *all* material facts and information concerning the Proposed Transaction, rather than seeking to garner shareholder support through material misrepresentations, omissions, and half-truths.  *See, e.g., Freedman v. Restaurant Assocs. Indus., Inc.*, No. 9212, 1990 Del. Ch. LEXIS 142, at *15 (Del. Ch. Sept. 21, 1990) (holding, in the context of a proxy solicitation, that "where management chooses to disclose its motives or the purposes of a transaction, it has an obligation to disclose those purposes honestly and candidly").  Notably, in *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116 (Del. Ch. 1986), the Court recognized that the Delaware Supreme Court and the SEC have determined that this type of information may be critical to an informed, reasoned shareholder decision as to how to vote.  The court in *Weinberger* stated as follows:

---

[1] *See Bader v. Anderson*, 179 Cal.App.4th 775, 791, n.5 (2009) (application of Delaware corporate law to a California corporation was appropriate since the pertinent Delaware authorities were not inconsistent with California principles); *see also The Oakland Raiders v. National Football League*, 93 Cal. App. 4th 572, 586, n.5 (2001) ("we may properly rely on corporate law developed in the state of Delaware given that it is identical to California corporate law for all practical purposes.")

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

> [T]he law, in response to developing corporate trends such as the increase in mergers, has begun to evolve in the opposite direction towards favoring more disclosure of soft information.
>
>                * * *
>
> This shift in policy is due, in part, to a recognition of the need for such information in [] merger situations where shareholders must decide whether or not to sell their securities.

*Id.* at 127-28.

As set forth more fully below, Defendants have violated Section 14(a) by issuing a Proxy that provides a number of false or misleading declarations of material fact and/or omissions of material fact. *See Desaigoudar v. Meyercord,* 223 F.3d 1020, 1022 (9th Cir. 2000).   Moreover, these following misleading statements and/or omissions disclosures also show that Defendants have breached their fiduciary duty of candor.   Unless the Court enjoins the Proposed Transaction and orders Defendants to properly disclose all material facts to Plaintiff and Bell Micro shareholders, Plaintiff will be forced to decide his vote on woefully insufficient information.

### a.   Defendants Fail to Disclose Material Information Regarding the Sales Process

First, the Proxy fails to disclose material information about the strategic alternatives that the Board and Company management.   Specifically, the Proxy states that Bell Micro entered into confidentiality agreements with 35 entities but fails to state what criteria were used to select these entities and why the Company entered into confidentiality agreements with these entities and not with others. *See* Punzalan Decl., Exh. F, p. 20-21.   The statement provides no analysis of what these discussions entailed, particularly whether any potential alternatives were proposed or considered. Moreover, the Proxy does not disclose any specifics regarding dates or the Company's financial condition during these discussions, which is particularly material because the time period of such discussions covers such a broad period of nearly three years (*i.e*., November 2006 to September 2009). *See* Punzalan Decl., Exh. F, p. 20-21.

Defendants also fail to disclose all material information about its reasons for pursuing a

business transaction only with Avnet.  Indeed, the Proxy fails to provide any basis for why the Individual Defendants only pursued a potential business transaction and signed an exclusivity agreement with Avnet after having entered confidentiality agreements with 34 other entities from the preceding three years.  *See* Punzalan Decl., Exh. F, p. 22.  The Proxy also provides no information as to whether Defendants attempted to contact any parties other than Avnet since November 2009, after the Company's condition began to significantly improve.  *See id.*

Defendants also fail to disclose all material information about all alternative proposals from Avnet and its reasons for agreeing to a $10.5 million termination fee.  *See* Punzalan Decl., Exh. F, p. 23.  The Proxy fails to explain any meaningful details of the "alternative proposals pursuant to which Avnet was prepare to increase its offer" or, for that matter, provide any explanation for why the Board felt that a termination fee of $10.5 million, which represents 19% of the Company's cash reserves, would be in the "best interests" of the shareholders.  *See id.*

The omitted information is material because shareholders are entitled to know why the Individual Defendants initially preferred one strategic alternative over others, and then continued to pursue that alternative to the exclusion of all others.

**b.  Defendants Fail to Disclose Material Information Supporting the Board's Reasons for the Merger**

The Proxy also fails to provide meaningful details about the Board's reasons for recommending that shareholders vote for the Proposed Transaction.  In particular, the Proxy fails to provide any meaningful explanation of the following stated reasons for the merger, namely: (a) Bell Micro's "future business prospects" or provide the "internal expectations of profitability for 2010"; (b) the exact costs and expenses that would be associated with upgrading the Company's technology systems; (c) why Bell's departure would pose "risks and uncertainties," and why the Board would not be able to adequately appoint a worthy successor to Mr. Bell given their experiences managing similar corporations; and (d) why the Individual Defendants specifically agreed and negotiated the preclusive "no shop" and "no solicitation" clauses as well as the exorbitant termination fee that supposedly

*prevented* them from engaging in negotiations with other third parties besides Avnet. *See* Punzalan Decl., Exh. F, p. 24-27.

Such disclosures are material because shareholders are entitled to know whether the Board's factors and considerations formed a reasonable basis for the Board to approve and recommend the Proposed Transaction.

### c. Raymond James's Valuation Analyses in Support of its Fairness Opinion Must Be Disclosed

In order for shareholders to render an informed decision regarding the Proposed Transaction, it is fundamental that they receive a fair summary of the key inputs relied upon, financial projections, and analyses performed by the financial advisor that rendered a fairness opinion relied upon by the Board. As the Ninth Circuit has stated, "investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest. Surely, the average investor's interest would be piqued by a company's internal projections ...." *United States v. Smith,* 155 F.3d 1051, 1064 n. 20 (9th Cir.1998). As one court has noted, the financial advisor's fairness opinion is "one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders and, in turn, for the stockholders' decisions on the appropriateness of the transaction." *Simonetti Rollover IRA v. Margolis*, C.A. No. 3694-VCN, 2008 WL 2588577 (Del Ch. June 27, 2008).

In terms of information necessary to render an informed judgment on a shareholder vote, the importance of the underlying financial analyses and projections of the fairness opinion cannot be overstated. The Proxy, however, does not disclose material information regarding the "financial and operating information" used in Raymond James's fairness opinion. *See* Punzalan Decl., Exh. F, p. 27-33. Thus, the lack of any appropriate valuation analyses leaves the shareholders ill-equipped to evaluate the adequacy of the Proposed Transaction. *See Brown v. Brewer*, No. CV 06-3731-GHK (JTLx), 2008 WL 6170885, at *4 (C.D. Cal. Jul. 14, 2008) (denying motion to dismiss Section 14(a) claim where financial projections relied upon in merger were omitted from the Proxy because "a reasonable shareholder may have considered the allegedly omitted information important in deciding

how to vote.")

The Proxy also fails to disclose the criteria Raymond James used to select the transactions reviewed in its "Transaction Premium Analysis" other than just mere "enterprise value." *See* Punzalan Decl., Exh. F, p. 27-33. The Proxy also fails to disclose the specific "transaction prices" referenced in each of the transactions Raymond James reviewed. *See id*. Similarly, the Proxy also fails to disclose material information regarding Raymond James's "Selected Public Companies Analysis" because Defendants fail to disclose the criteria Raymond James used to select the companies reviewed for this analysis, or, for that matter, the specific financial multiples, enterprise value, equity value, or net income used to make these calculations. *See id*. The Proxy also fails to disclose material information regarding Raymond James's "Discounted Cash Flow Analysis" by failing to disclose the data and methodology Raymond James employed to determine the range of terminal values of estimated 2014 EBITDA or the data and methodology Raymond James employed to determine the appropriate range of discount rates for this analysis. *See id*.

The omitted information is material to shareholders because information relied upon by the Company's financial advisors in creating their fairness opinion, particularly where a banker's endorsement of the fairness of a transaction is touted to shareholders, is relevant and must be disclosed. *See, e.g.*, *Simonetti Rollover IRA v. Margolis*, 2008 WL 5048692 at *9-10 (Del. Ch. June 27, 2008) ("A proxy statement should give the stockholders the best estimate of the company's future cash flows as of the time the board approved the [transaction].") (quotation omitted). As in *In re Netsmart Techs., Inc. Shareholder Litig*, Plaintiff has been presented with a fairness opinion and is "being asked to make an important voting decision to which [Bell Micro's] future prospects are directly relevant." 924 A.2d 171, 202 (Del. Ch. 2007). The omission of all material data makes that decision all but impossible to make. In *Netsmart*, the court commented that:

> The conclusion that this omission is material should not be surprising. Once a board broaches a topic in its disclosures, a duty attaches to provide information that is "materially complete and unbiased by the omission of material facts." For this reason, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the

11

> valuation methods used to arrive at that opinion as well as the key inputs
> and range of ultimate values generated by those analyses must also be
> fairly disclosed.  Only providing some of that information is insufficient
> to fulfill the duty of providing a "fair summary of the substantive work
> performed by the investment bankers upon whose advice the
> recommendations of the [] board as to how to vote … rely."

*Id.*

Thus, Plaintiff, as a Bell Micro shareholder, needs, but was not provided with, this information in order to evaluate the fairness of the consideration offered in the Proposed Transaction, the accuracy of Raymond James' valuation analyses, and to determine how to vote on the Proposed Transaction.

Consequently, Defendants have failed to disclose all material information to Bell Micro shareholders necessary for them to make a fully informed decision on how to vote on the Proposed Transaction.  Thus, absent Court intervention, through the requested injunction, Plaintiff, as a Bell Micro shareholder, will face irreparable harm as a result of these fiduciary breaches.  *See, e.g., Zen Invs., LLC v. Unbreakable Lock Co.*, No. 06-112, 2006 U.S. Dist. LEXIS 37171, at *13 (E.D. Pa. June 2, 2006) (fundamental unfairness of a transaction can result "from non-disclosure or misrepresentation concerning some essential of the merger").

### 2.   Plaintiff Has a Strong Likelihood of Success on Claims For Breach of Fiduciary Duty to Maximize Shareholder Value

California law recognizes that officers and directors owe a fiduciary duty to stockholders and controlling stockholders owe a fiduciary duty to minority stockholders to exercise "of good faith and inherent fairness."  *Small v. Fritz Companies, Inc.* 30 Cal.4th 167, 179 (2003); *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 109-110, 112 (1969).   Delaware law, which provides persuasive authority regarding California corporations,[2] also holds that in managing the business and affairs of a corporation, the board of directors "owe[s] fiduciary duties of care and loyalty to the corporation and its shareholders."  *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986).

---

[2] *See Bader*, 179 Cal.App.4th at 791 (2009); *Oakland Raiders*, 93 Cal. App. 4th at 586, n.5

12

Plaintiff expects Defendants to argue that their conduct is protected by the "business judgment rule,"  which generally "immunizes [corporate] directors from personal liability if they act in accordance with its requirements, and another which insulates from court intervention those management decisions which are made by directors in good faith in what the directors believe is the organization's best interest." *Lee v. Interinsurance Exchange*, 50 Cal.App.4th 694, 714 (1996) (citation omitted).

While in most types of corporate transactions affecting shareholder rights courts will apply the "business judgment rule," the conduct of corporate directors falls outside the scope of the business judgment rule in connection with certain types of corporate transactions.  *See Revlon*, 506 A.2d at 182. Among the types of transactions triggering "*Revlon* duties" are those that result in a change of control of the corporation.  *See Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1287 (Del. 1989) ("where issues of corporate control are at stake, there exists 'the omnipresent specter that a board may be acting primarily in its own interests, rather than those of the corporation and its shareholders.' For that reason, an 'enhanced duty' must be met at the threshold before the board receives the normal protections of the business judgment rule.") (citing *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985)).

In *Paramount Commc'n, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 42-43, 47 (Del. 1994), the Delaware Supreme Court defined "change of control" for these purposes, and explained the basis for the rule, as follows: "When a majority of a corporation's voting shares are acquired by a single person or entity, or by a cohesive group acting together, there is a significant diminution in the voting power of those who thereby become minority stockholders."   637 A.2d at 42.   The court explained the underlying reason for the need for enhanced scrutiny into whether directors have discharged their fiduciary duties in such situations as follows:

> Because of the intended sale of control, the Paramount-Viacom transaction has economic consequences of considerable significance to the Paramount stockholders. Once control has shifted, the current Paramount stockholders will have no leverage in the future to demand another control premium. As a result, the Paramount stockholders are

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

> entitled to receive, and should receive, a control premium and/or protective devices of significant value. There being no such protective provisions in the Viacom-Paramount transaction, the Paramount directors had an obligation to take the maximum advantage of the current opportunity to realize for the stockholders the best value reasonably available.

*Id.* at 43.  The Delaware Supreme Court explained the concept of "enhanced scrutiny" in this context as follows:

> The key features of an enhanced scrutiny test are: (a) a judicial determination regarding the adequacy of the decision making process employed by the directors, including the information on which the directors based their decision; and (b) a judicial examination of the reasonableness of the directors' action in light of the circumstances then existing.  The directors have the burden of proving that they were adequately informed and acted reasonably.

Thus, Defendants' business decisions with respect to the Proposed Transaction are subject to an enhanced judicial scrutiny before any presumptions of the business judgment rule can be applied. Indeed, in the context of a change of control, the burden of proof is on Defendants to establish that they have taken all reasonable steps to maximize shareholder value.  *Id.*

Here, Defendants' conduct cannot stand the test of enhanced scrutiny, and they certainly have not established that they have taken all reasonable steps to maximize shareholder value.  Defendants appear to have only pursued a potential business transaction with Avnet and appear not to have contacted any other parties besides Avnet since November 2009, at which point the Company's condition began to improve dramatically.  *See* Punzalan Decl., Exh. F, p. 22-23.  This failure to seek or even consider the possibility of an alternate, superior transaction with a party other than Avnet since November 2009[3] represents a complete failure by the Bell Micro Board to maximize shareholder value

---

[3]     Any market check or sales process that Defendants conducted prior to November 2009 is irrelevant and fails to establish that Defendants undertook reasonable efforts to maximize shareholder value, because the Company's circumstances have changed so radically in the past six months.  Any prior market check was thus utterly stale by the time Defendants agreed to the Proposed Transaction, and does not provide a reliable basis on which to judge the value of the Company.  *See Gimbel v. Signal Cos.,* 316 A.2d 599, 612-15 (Del. Ch. 1974), *aff'd* 316 A.2d 619 (1974) (holding that stale market data failed to provide any basis to judge the value of the company being sold); *In re Gen.*

14

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

in light of the changing circumstances.  *See Barkan*, 567 A.2d at 1287 (holding that "when the board is considering a single offer and has no reliable grounds upon which to judge its adequacy, this concern for fairness demands a canvas of the market to determine if higher bids may be elicited").[4] Unsurprisingly, this fundamentally inadequate process led to an inadequate and unfair price.

Moreover, the Board's failure to conduct a reasonable market check to ascertain and maximize the value of Bell Micro shares in connection with the sale of the Company is aggravated by the fact that the Proposed Transaction includes onerous and preclusive deal protection provisions which will make the emergence of a competing bid nearly impossible.  *See* Punzalan Decl., Exh. E, pp. 17, 57, 64. These preclusive deal protection devices, which include a standstill provision, a no-shop clause, and an over-sized termination fee provision, render the Board's failure all the more egregious and harmful to the shareholders.  *See Barkan v. Amsted Indus. Inc.*, 567 A.2d at 1279, 1288 (Del. 1989) (holding that "[w]here a board has no reasonable basis upon which to judge the adequacy of a contemplated transaction, a no-shop restriction gives rise to the inference that the board seeks to forestall competing bids.")

---

*Motors (Hughes) S'holder Litig.*, No. 20269, 2005 WL 1089021, at *16 (Del. Ch. May 4, 2005) (noting that allegations that financial information became stale due to changing market conditions provide sufficient grounds to hold that the board should have considered more recent information).

[4]   As the Delaware Supreme Court explained in *Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 637 A.2d at 44:

> In the sale of control context, ***the directors must focus on one primary objective -- to secure the transaction offering the best value reasonably available for the stockholders*** -- and they must exercise their fiduciary duties to further that end. The decisions of this Court have consistently emphasized this goal. *Revlon,* 506 A.2d at 182 ("The duty of the board ... [is] the maximization of the company's value at a sale for the stockholders' benefit."); *Macmillan,* 559 A.2d at 1288 ("[I]n a sale of corporate control the responsibility of the directors is to get the highest value reasonably attainable for the shareholders."); *Barkan,* 567 A.2d at 1286 ("[T]he board must act in a neutral manner to encourage the highest possible price for shareholders."). *See also Wilmington Trust Co. v. Coulter,* Del.Supr., 200 A.2d 441, 448 (1964) (in the context of the duty of a trustee, "[w]hen all is equal ... it is plain that the Trustee is bound to obtain the best price obtainable").

15

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

As Defendants' actions do not satisfy enhanced scrutiny, the business judgment rule simply does not apply to Defendants' conduct here.  Even if it did apply here – and it does not – the business judgment rule would not aid defendants.   The business judgment rule is merely a rebuttable presumption, and plaintiff may rebut that presumption by coming forward with evidence sufficient to show that the board failed to conduct a reasonable inquiry, acted with improper motives, or acted under a conflict of interest.  *Lee v. Interinsurance Exchange*, 50 Cal.App.4th at 715.

Moreover, in order to invoke the business judgment rule's protection, "directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them.  Having become so informed, they must then act with requisite care in the discharge of their duties."  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds*, 746 A.2d 244 (Del. 2000).  Here, the decision to agree to the terms of the Proposed Transaction appears not to have been based upon the informed judgment on the part of the directors.  Indeed, the directors have to failed to show that they properly considered alternative transactions that may have provided superior value to Plaintiff.   In any event, the sketchy and unusual disclosures make it impossible to make such a definitive determination in the absence of further disclosures.

The business judgment rule also applies only to those directors who do not engage in self-dealing, that is, who do not breach their duty of loyalty.  *See Gantler v. Stephens*, 965 A.2d 695, 707 (Del. 2009) (holding that a cognizable claim of disloyalty rebuts the business judgment presumption).  Likewise, the rule's protections can only be claimed by disinterested directors, which "means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally."  *Aronson* 473 A.2d at 812; *see also Schoon v. Smith*, 953 A.2d 196, 206 (Del. 2008) (courts "have repeatedly emphasized the important role of independent directors" when evaluating the exercise of business judgments); *Gantler*, 965 A.2d at 707 (finding chairman of board acted disloyally for purposes of rebutting business judgment rule where his response to proposed purchase of company was done in "his personal financial interest, as opposed to the interests of the shareholders").

16

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Here, it is clear that Defendants are personally benefitting from the Proposed Transaction in a way that the shareholders will not, and are thus placed in a position of a fundamental conflict of interest stemming from a clear appearance of self-dealing.  Specifically, the Individual Defendants are holders of thousands of stock options, and the Proposed Transaction will greatly accelerate the Defendants' opportunity to monetize their stake in Bell Micro, creating a conflict that prevents them from adequately representing the public shareholders.  *See* Punzalan Decl., Exh. F, p. 36.  Moreover, Avnet and the Surviving Corporation will also indemnify the Individual Defendants with respect to all acts or omissions by them in their directorial capacities for acts prior to the effective time of the Proposed Transaction, thereby insulating the Defendants for any potential liability in connection with any of the legal proceedings in which Bell Micro is involved.  *See* Punzalan Decl., Exh. E, p. 57.  In light of these factors, the Proxy indicates that Defendants have a clear conflict of interests.  *See* Punzalan Decl., Exh. F, p. 35 (stating that "***some of our directors and executive officers have interests in the merger that are different from, or in addition to, the interests of our shareholders generally*** . . . .") (Emphasis added.)

Indeed, as the Proxy further admits, Defendant Bell alone stands to gain approximately $1,265,000 in payments if his employment is terminated as a result of the Proposed Transaction.  *See* Punzalan Decl., Exh. F, p. 36.  Moreover, the Proxy also indicates that all then-outstanding stock options, whether or not vested, held by the Company's directors will be exercisable, and each restricted stock unit held by them will be converted into the right to receive the merger consideration for each share of common stock.  The following table below sets forth the total consideration each Defendant is expected to receive as a result as a result of such acceleration:

| Name | Vested Options | | Unvested Options | | RSUs | Total Consideration |
| | Underlying Shares | Weighted Average Exercise Price | Underlying Shares | Weighted Average Exercise Price | | |
| --- | --- | --- | --- | --- | --- | --- |
| W. Donald Bell | 56,250 | $ 6.32 | 343,750 | $ 2.24 | — | $ 1,674,500 |
| Gordon Campbell | 30,000 | $ 2.76 | — | — | — | 127,200 |

17

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Eugene B. Chaiken | 45,000 | $ | 3.58 | — | — | — | 153,900 |
| David M. Ernsberger | 67,500 | $ | 4.57 | — | — | — | 164,025 |
| Edward L. Gelbach | 45,000 | $ | 4.21 | — | — | — | 125,550 |
| Peter G. Hanelt | 22,500 | $ | 1.75 | — | — | — | 118,125 |
| James E. Ousley | 37,500 | $ | 3.47 | — | — | — | 132,375 |
| Mark L. Sanders | 37,500 | $ | 3.47 | — | — | — | 132,375 |

*See* Punzalan Decl., Exh. F, p. 36.

In sum, even the incomplete, pre-discovery facts before the Court rebut the presumption that Defendants are protected by the business judgment rule.  Defendants, in turn, cannot establish that the Proposed Transaction is the result of a process that maximized shareholder value, or that their disclosures are adequate.  For all of the reasons discussed above, the Proposed Transaction should be enjoined.

**B.    Plaintiff Faces Immediate Irreparable Injury Due to Defendants' Attempt to Force a Stockholder Vote Without Disclosing All Material Information Concerning the Proposed Transaction**

Defendants, in violation of Section 14(a) and their breach of their fiduciary duties of loyalty, care, and disclosure, have stranded Bell Micro shareholders without the procedural protections to which they are entitled and without information material to a full understanding of the Proposed Transaction. Where the process of review of a proposed transaction by a board is uninformed or tainted, courts have recognized the necessity for injunctive relief.  *See Paramount Commc'n*, 637 A.2d at 51; *Kumar v. Racing Corp. of Am., Inc.*, No. 12,039, 1991 Del. Ch. LEXIS 75 (Del. Ch. Apr. 26, 1991) (injunction appropriate where plaintiffs demonstrated breach of duty of care and entire fairness); *Phillips v. Insituform of N. Am., Inc.*, C.A. No. 9173, 1987 Del. Ch. LEXIS 474, at *33 (Aug. 27, 1987) ("a preliminary injunction is the conventional remedy when a shareholder establishes that a proposed merger is likely to be found to be in violation of . . . the board's fiduciary obligations").  *See also Sealy*

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

*Mattress Co. of N.J. v. Sealy, Inc.*, 532 A.2d 1324, 1335 (Del. Ch. 1987); *Joseph v. Shell Oil Co.*, 482 A.2d 335 (Del. Ch. 1984). Defendants' violations alone establish the requisite irreparable injury.

Plaintiffs also have shown that there have been material defects in the process leading to the Proposed Transaction and in the Proxy. When stockholders face making "an important voting decision [based] on inadequate disclosures" a threat of irreparable harm exists. *In re Netsmart*, 924 A.2d at 207; *see also ODS Techs. L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003). Where, as here, there are material deficiencies in the disclosure documents recommending shareholder action, courts routinely hold that injunctive relief is appropriate. *See, e.g., Gilmartin v. Adobe Res. Corp.*, C.A. No. 12467, 1992 Del. Ch. LEXIS 80, at *43 (Del. Ch. Apr. 6, 1992) ("[t]he right to cast an informed vote is specific, and its proper vindication in this case requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages," and if merger is allowed to go forward it could not be undone); *Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051, 1062 (Del. Ch. 1987) (shareholder's right to make informed, uncoerced decision requires specific, if not substitutional remedy for which damages would be neither meaningful nor adequate).

In addition, it is well-established that, where a change in corporate control is at stake, a board of directors has a fiduciary duty to maximize "the company's value at a sale for the stockholders' benefit." *Revlon*, 506 A.2d at 182. *See MacMillan*, 559 A.2d at 1288 ("We stated in *Revlon,* and again here, that in a sale of corporate control the responsibility of the directors is to get the highest value reasonably attainable for the shareholders.") (citing *Revlon*, 506 A.2d at 182); *Paramount*, 637 A2d at 43 ("The consequences of a sale of control impose special obligations on the directors of a corporation. In particular, they have the obligation of acting reasonably to seek the transaction offering the best value reasonably available to the stockholders."). Thus, courts have held injunctive relief to be appropriate where, as here, the process leading to approval of a sale of control has been flawed by the directors' breach of their obligation to obtain the highest value reasonably available. *See Paramount*, 637 A.2d at 43-47. Similarly, in *In re Holly Farms Corp. S'holders Litig.*, C.A. No. 10350, 1988 Del. Ch. LEXIS 164 (Del. Ch. Dec. 30, 1988), the court concluded that the sale process was so substantially flawed that the board's actions were not likely to have maximized the value of the corporation or its shareholders.

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Again, Bell Micro's Board has failed to show that it has undertaken any reasonable efforts to shop Bell Micro to competing bidders in order to ensure that Plaintiff received the maximum value reasonably available for his shares, and has failed to show that it took steps to pursue possible superior alternate transactions. *See* Punzalan Decl., Exh. F, p. 22-23. By declining to pursue the possibility of superior alternative offers in the market, Defendants prevented market forces from being "allowed to operate freely to bring the target's shareholders the best price available for their equity." *Revlon*, 506 A.2d at 184.

Where, as here, shareholders are likely to be deprived of receiving more valuable consideration for their Bell Micro shares from a competing offer, they will suffer irreparable harm absent an injunction. *See Netsmart*, 924 A.2d at 208 ("In cases where the refusal to grant an injunction presents the possibility that a higher, pending, rival offer might go away forever, our courts have found a possibility of irreparable harm."); *QVC Network Inc. v. Paramount Commc'ns, Inc*, 635 A.2d 1245, 1273 n.50 (Del. Ch. 1993) ("Since the opportunity for shareholders to receive a superior control premium would be irrevocably lost if injunctive relief was not granted, that alone would be sufficient to constitute irreparable harm."). Defendants' failure to take all reasonable steps to maximize shareholder value constitutes a manifestly irreparable injury to Plaintiff as a Bell Micro shareholder, who will forever lose his right to a fair price and a control premium absent injunctive relief, and calls for this Court's exercise of its injunctive powers.

**C.   The Balance of Equities Weighs Heavily in Favor of Plaintiff as Plaintiff Raises Serious Questions and Is Likely to Suffer Greater Injury from a Denial of the Preliminary Injunction than Defendants Will Suffer from a Short Delay in The Closing of the Proposed Transaction**

The balancing of hardships also tips decidedly in favor of granting injunctive relief. Defendants' failure to fulfill their fiduciary duties in connection with the Proposed Transaction will forever deprive Plaintiff of the right to act in an informed manner, the right to obtain the best transaction reasonably available, the right to obtain the full value of his interest in Bell Micro, and the right to the ownership interests provided by United States and California law.

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

On the other hand, there can be little, if any, harm that would befall Defendants in enjoining the Proposed Transaction pending fulfillment of the Board's fiduciary duties.  As has been shown here, there is no evidence that Bell Micro would be in danger of imminent financial collapse or catastrophe if the Proposed Transaction preliminarily enjoined.  Indeed, Bell Micro's prospects as a standalone company appear to be more favorable than if the Proposed Transaction were consummated.  Plaintiff's right to obtain the maximum value for his shares available in the market thus outweighs any purported injury to Bell Micro resulting from enjoining the Proposed Transaction.  *See*, *e.g.*, *Revlon*, 506 A.2d at 184-85 (in granting preliminary injunction, "the need for both bidders to compete in the marketplace outweighed any injury to [proposed bidder]").

The injunction sought here is reasonably suited to abate the offending activity and will not adversely affect the public interest, particularly given the public's interest in ensuring that fiduciaries comply with their obligations and that directors comply with federal securities laws.

## II.    The Court Should Grant Plaintiff's Motion to Expedite Discovery

Plaintiff has good cause to warrant expedited discovery proceedings before a conference takes place under Fed. R. Civ. P. 26(f).  Given the limited time frame for the closing of the Proposed Transaction, the ordinary course of discovery proceedings under the Federal Rules of Civil Procedure would be inappropriate since, by the time discovery responses are due, the transaction may essentially be completed.

Defendants are also unable to argue that they face prejudice if discovery proceedings are expedited.  Plaintiff requests very limited discovery related to the Proposed Transaction, a transaction that was announced less than two months ago.  Thus, these documents have likely been viewed or prepared by Defendants very recently and would take relatively little effort to gather and produce.

Although Fed. R. Civ. P. 26(d) generally prohibits parties from seeking discovery "before the parties have conferred as required by Rule 26(f)," a court may deviate from this rule and authorize a party to conduct discovery on an expedited basis. Fed. R. Civ. P. 26(d).  California federal courts "apply a 'good cause' standard in considering motions to expedite discovery . . . . Good cause may be found where the *need for expedited discovery*, in consideration of the administration of justice,

*outweighs the prejudice to the responding party*." *Matson v. Isom Tech. Consulting v. Dell Inc.*, No. CIV S-08-0683, 2008 WL 3863447, at *2 (E.D. Cal. Aug. 18, 2008) (quoting *Semitool, Inc. v. Tokyo Electron Am.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).

### A. Plaintiff Can Show Good Cause for Expedited Discovery

Plaintiff can show good cause to conduct discovery on an expedited basis to obtain the omitted material information from the Proxy. As detailed above, Plaintiff seeks to preliminarily enjoin the Proposed Transaction. As of March 29, 2010, the date the Proposed Transaction was first announced, the Proposed Transaction was expected to close in as soon as 60 days from that date – i.e., May 28, 2010, *approximately one week from now*. *See* Punzalan Decl., Exh. C. However, since the Rule 26(f) conference is not scheduled to take place until August 5, 2010, it would be months before Plaintiff could begin conducting any discovery unless discovery is expedited. Thus, the ordinary course of discovery proceedings under the federal rules would be inappropriate and insufficient, given the limited time frame for the closing of the Proposed Transaction. The slower pace of normal pretrial discovery will clearly prejudice Plaintiff since, by the time discovery has even commenced, the transaction may essentially be completed.

Further, expedited discovery is supported by the inherent dangers of the Proposed Transaction closing before discovery has been completed. The omitted material information creates a compelling need for injunctive relief because Bell Micro's shareholders are entitled to all material information pertaining to the Proposed Transaction. The Proxy is materially deficient in enabling the shareholders to make an informed decision on the future of their investment. In short, the Proxy does not provide shareholders adequate information.

### B. Defendants Will Face No Prejudice from Expedited Discovery Because Plaintiff's Requests Are Limited and Narrowly Focused

Defendants will face no prejudice from expedited discovery in this case. Plaintiff's discovery requests are limited and narrowly focused to documents and testimony regarding the Board's decision

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

to approve the Proposed Transaction, and such discovery would pose little burden to Defendants to produce.  Specifically, Plaintiff requests the following limited discovery from Defendants:

1. Production of minutes from any meetings attended by any member of Bell Micro's Board of Directors at which the Proposed Transaction or any other potential strategic transactions were was discussed, including any discussions regarding voting on the Proposed Transaction.

2. Production of Raymond James' Fairness Opinion or any other opinions prepared by bankers or financial advisors in connection with the Proposed Transaction.

3. Production of all financial projections prepared by Bell Micro management during the past 12 months, including but not limited to projections provided to any investment bankers or financial advisors in connection with any fairness opinion(s) provided in connection with the Board's consideration of the Proposed Transaction.

4. Production of all presentation documents, prepared by Bell Micro management or any bankers or financial advisors referenced in Paragraph 2, concerning the Proposed Transaction or any other potential strategic transaction, merger, or acquisition.

5. Production of any valuations prepared assessing the value of Bell Micro as an enterprise, or Bell Micro stock, in the past 12 months.

6. Production sufficient to identify any benefits to be received by any officer, director, or member of management of Bell Micro in connection with the Proposed Transaction.

7. Production of all communications and other documents (including, but not limited to, letters, emails, memoranda, and spreadsheets) concerning the terms of the Proposed Transaction or any other potential strategic transaction during the past 12 months.

8. Depositions of the two persons most knowledgeable with respect to the Proposed Transaction and any other potential strategic transactions considered by the Board during the past 12 months.

9. Depositions of the person most knowledgeable regarding the financial projections of Bell Micro.

Defendants will be unable to argue any prejudice from having to respond to such discovery on an expedited basis.  Since the Proposed Transaction was just announced on March 29, 2010, the requested documents have likely been viewed or prepared by Defendants very recently and would take little effort to gather and produce.  *See, e.g., Renaud v. Gillick*, No. C06-1304RSL, 2007 WL 98465, at *3 (W.D. Wash. Jan. 8, 2007) (finding that expedited document requests "will not impose a significant

burden upon defendant.").  In any event, each of the discovery requests concerns evidence relevant to Plaintiff's Section 14(a) and fiduciary duty claims, and Defendants will most likely need to produce this discovery after the Rule 26(f) conference even in the absence of expedited discovery.  Thus, Defendants should produce such documents on an expedited basis in the interest of the "prompt and efficient disposition of this litigation." *Wachovia Securities, LLC v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008)

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court allow Plaintiff to conduct the limited discovery set forth in Section II.B to take place immediately.  Plaintiff requests that the Court defer its ruling on the preliminary injunction until Plaintiff evaluates the evidence obtained through expedited discovery.

Dated:   May 21, 2010                           Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

 /s/ Mark Punzalan
Mark Punzalan

Rosemary M. Rivas.
100 Bush St., Suite 1450
San Francisco, CA 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Counsel for Plaintiff Henry Zwang

MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY